UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH CHRISTIAN FONTANA,

     Petitioner,

v.                                               Case No.  3:15cv494/RV/CJK

JULIE JONES,

     Respondent.

_____/

<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 18).  Petitioner replied.  (Doc. 22).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On November 15, 2010, petitioner was charged in Santa Rosa County Circuit Court Case No. 09-CF-803, with sexual battery of a child while in a position of familial or custodial authority (Counts 1, 2 and 3); lewd or lascivious molestation of a child less than 16 years of age (Count 4); lewd or lascivious exhibition in the presence of a child less than 16 years of age (Count 5); lewd or lascivious conduct (Count 6); and solicitation of a child to commit sexual battery while in a position of familial or custodial authority (Counts 7 and 8).  (Doc. 18, Ex. A, pp. 195-98).[1]  The charges stemmed from petitioner's sexually abusing a boy, T.M.E., over a three-year period.

Petitioner went to trial on December 7, 2011.  (Exs. J, K, L).  After the State rested, the trial court granted a judgment of acquittal on Count 6.  (Ex. K, pp. 316-21 (trial transcript); Ex. E, p. 845 (judgment)).  The jury found petitioner guilty as charged of the remaining seven offenses.  (Ex. E, pp. 820-21).  Petitioner was sentenced as a sexual predator to consecutive terms of 30 years in prison on Counts 1, 2 and 3; 15 years in prison on Counts 4 and 5; and 5 years in prison on Counts 7

---

[1]References to exhibits are to those provided at Doc. 18.  If a page of an exhibit has more than one page number, the court cites the number appearing at the bottom left corner of the page.

and 8, for a total of 130 years in prison. (Ex. E, pp. 845-51). Petitioner's sentences were ordered to run consecutive to the sentences imposed in Case No. 09-CF-804, a case involving petitioner's sexual abuse of the victim's half-brother. (*Id*.). The Florida First District Court of Appeal (First DCA) affirmed the judgment on March 22, 2013, per curiam and without a written opinion. *Fontana v. State*, 109 So. 3d 209 (Fla. 1st DCA 2013) (Table) (copy at Ex. O).

On April 4, 2014, petitioner filed in the First DCA a *pro se* petition for writ of habeas corpus alleging ineffective assistance of appellate counsel. (Ex. P). The First DCA per curiam denied the petition on April 28, 2014, in a one-sentence opinion stating: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." *Fontana v. State*, 138 So. 3d 507 (Fla. 1st DCA 2014) (copy at Ex. Q).

On May 15, 2014, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he amended on February 18, 2015. (Doc. 1, p. 3; Doc. 18, Ex. R). The state circuit court denied relief without an evidentiary hearing. (Ex. R, p. 19 - Ex. S, p. 337). The First DCA summarily affirmed, per curiam and without a written opinion. *Fontana v. State*, 175 So. 3d

289 (Fla. 1st DCA 2015) (Table) (copy at Ex. T).  The mandate issued October 27, 2015.  (Ex. T).

Petitioner filed his federal habeas petition on October 30, 2015.  (Doc. 1, p. 1).  The petition raises four claims of ineffective assistance of trial counsel. Respondent asserts that petitioner is not entitled to relief, because the state court's rejection of his claims was not contrary to or an unreasonable application of clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence in the state court record.  (Doc. 18, pp. 15-34).

## RELEVANT LEGAL STANDARDS

### Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-32, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]

The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.

*Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*,

537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's

summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Trial Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below

an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  The burden to overcome that presumption and to show that counsel's performance was deficient "rests squarely on the defendant."  *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." (quotation marks and alterations omitted)).  "[T]he absence of evidence cannot overcome the strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance." *Titlow*, 134 S. Ct. at 17 (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must

guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

<u>Ground One</u>     "COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN <u>FAILING TO OBJECT TO ERRONEOUS JURY</u> <u>INSTRUCTION.</u>"  (Doc. 1, p. 5).

Petitioner claims trial counsel was ineffective for failing to object to the jury instructions on Counts 1, 2 and 3 (the sexual battery counts).  Petitioner contends the third element of each instruction was erroneous because it included alternative theories of sexual penetration *or* sexual union, but the amended information charged him on only one theory in each sexual battery count.  (Doc. 1, p. 5).  The parties agree that petitioner exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding.  (Doc. 18, p. 16).  Respondent argues that petitioner is not entitled to relief because he has not met § 2254(d)'s highly deferential standard. (Doc. 18, pp. 16-21).

Petitioner presented this claim to the state courts as Claim One of his amended Rule 3.850 motion.  (Ex. R, pp. 8-10).  The state circuit court identified the standard

articulated in *Strickland* as the controlling legal standard (Ex. R, pp. 20-21), and

denied relief as follows:

### Claim One:  Erroneous Jury Instructions

Defendant first alleges that his counsel was ineffective by failing to object to erroneous jury instructions.  Specifically, Defendant alleges that erroneous jury instructions were given for counts one and two regarding the charges of sexual battery (engages in sexual battery while in position of familial or custodial authority).  For count one, Defendant was charged with committing sexual battery by penetrating the mouth of T.M.E. with his penis.  For count two, Defendant was charged with committing sexual battery by union of the mouth of Defendant with the penis of T.M.E.  However, at trial the jury was instructed that in order for Defendant to be found guilty of counts one and two, the State had to prove Defendant penetrated *or* had union with the mouth of T.M.E.  Defendant alleges that these erroneous jury instructions and counsel's inaction in failing to object to said instructions left the State free to argue both penetration and union interchangeably, thus confusing the jury and permitting it to return a general verdict on count one based on an alternative theory (sexual union) not charged in the information.  Defendant further alleges that the erroneous jury instructions constitute fundamental error committed by the Court, based on the ruling of <u>Eaton v. State</u>, 908 So. 2d 1164, 1165 (Fla. 1st DCA 2005).  Consequently, Defendant claims that because fundamental error has occurred, this cause should be reversed for a new trial, or alternatively an evidentiary hearing granted on the merits.

Initially, it appears that Defendant's claim is facially insufficient in that Defendant never claims that the results of his trial would have been different if counsel had objected to the erroneous jury instructions.  Although Defendant claims the jury was "confused", he does not allege that its verdict would have been different if it had been instructed properly.

Regardless, even if Defendant's claim were considered facially sufficient, Defendant would still not be entitled to relief. The record shows that the standard jury instructions given for counts one and two were erroneous in the instant case. However, fundamental error has not occurred.

While [Defendant] is correct that the opinion in Eaton v. State, 908 So. 2d 1164 (Fla. 1st DCA 2005) recognized a *per se* rule of fundamental error under these circumstances, the rule has been modified by subsequent case law. In State v. Weaver, 957 So. 2d 586 (Fla. 2007), the Florida Supreme Court held that where a jury instruction erroneously includes "an element of an offense that the State does not argue is present and about which it presents no evidence," the error "is not pertinent or material to what the jury must consider in order to convict." State v. Weaver, 957 So. 2d at 588, 589 (citations omitted). The Court held that when a jury is instructed alternatively, one alternative is not charged, and the State neither relies on that element nor presents any evidence thereon, the jury's general verdict may be presumed to rest on "the elements on which the State actually presented evidence, on which the State based its arguments, and which the defendant contested at trial." State v. Weaver, 957 So. 2d at 589. Accordingly, in Weaver, instructing the jury on the two forms of battery – when the charge, evidence, and argument by the State concerned only one method – did not rise to the level of fundamental error.

This contraction of the fundamental error exception was applied to the "penetration or union" instruction for lewd or lascivious battery in Ross v. State, 31 So. 3d 858 (Fla. 1st DCA 2010). There, the evidence and argument at trial made it clear to the court that the jury did *not* convict the appellant based on the uncharged theory of sexual union.

> Only when there is reason to believe the conviction is for an offense not charged, as when the jury's verdict *specifically* convicts the defendant of the uncharged form of the offense, will the fundamental error exception be justified due to a violation of the defendant's due process rights. Jaimes v. State, 51 So. 3d 445 (Fla. 2010).

Olivera v. State, 58 So. 3d 352, 353-54 (Fla. 1st DCA 2011).

> Contrary to Defendant's allegations, the State did not argue the elements of penetration and union interchangeably. In fact, the record demonstrates that the State specifically argued penetration as to count one, and union as to count two. Although evidence of both penetration and union was submitted by the State, this evidence was to prove each of the counts and was not used interchangeably between the counts alleged. Additionally, Defendant was found guilty of both counts one and two "as charged." There is no indication from the verdict that Defendant was convicted for an uncharged offense for either count one or count two. Consequently, fundamental error did not occur in the instant case. Further, Defendant is unable to demonstrate the results of his trial would have been different if counsel had objected to the jury instructions. The jury heard evidence and specific argument as to the elements of each count before determining its verdict. A change in the jury instructions would not have affected the results of Defendant's trial. Defendant is not entitled to relief as to this claim.

(Ex. R, pp. 21-24) (footnotes citing to record attachments omitted). The First DCA

summarily affirmed the denial of postconviction relief. *Fontana v. State*, 175 So. 3d

289 (Fla. 1st DCA 2015) (Table) (copy at Ex. T).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's

summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL 737820 (U.S. Feb. 27, 2017).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*."  *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief."  *Richter,* 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court."  *Id.* at 102.

Under the *Richter* test, petitioner must establish there was no reasonable basis for the First DCA to deny relief on his ineffective assistance claim.  In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state circuit court).  The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends.  In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

There is at least one reasonable basis on which the First DCA could have denied relief on petitioner's claim.  The amended information is part of the state court record, as are the jury instructions.  (Ex A, pp. 196-97; Ex. E, pp. 823-24). Petitioner was charged in Count 1 with committing sexual battery by penetration – petitioner's "penetrating the mouth of T.M.E. with his penis".  (Ex. A, p. 196). Petitioner was charged in Count 2 with committing sexual battery by union – "union of the mouth of Joseph Christian Fontana with the penis of T.M.E." (*Id*.).  Petitioner was charged in Count 3 with committing sexual battery by union – "union of the

mouth of Joseph Christian Fontana with the anus of T.M.E." (Ex. A, pp. 196-97). The jury instruction for Count 1 provided that in order to find petitioner guilty of that charge, the State had to prove, as the third element, that "Joseph Christian Fontana committed an act upon T.M.E. in which the sexual organ of the [sic] Joseph Christian Fontana penetrated or had union with the mouth of T.M.E." (Ex. E, p. 823). The jury was instructed on Count 2 that the State had to prove, as the third element, that "Joseph Christian Fontana committed an act upon T.M.E. in which the sexual organ of T.M.E. penetrated or had union with the mouth of Joseph Christian Fontana." (Ex. E, p. 824). The jury was instructed on Count 3 that the State had to prove, as the third element, that "Joseph Christian Fontana committed an act upon T.M.E. in which the sexual organ of T.M.E. had union with the mouth of Joseph Christian Fontana. (Ex. E, p. 824).[3]

Regardless of whether counsel had a basis to object to the inclusion of the alternative theories, the First DCA reasonably could have concluded petitioner failed to establish prejudice under *Strickland*, because he failed to demonstrate a

---

[3] Although petitioner's federal habeas petition challenges the jury instructions on Count 1, 2 **and 3**, his Rule 3.850 motion challenged only the instructions on Counts 1 and 2. Petitioner's reasoning for now challenging Count 3 is unclear, as the instruction on Count 3 did not include alternative theories of penetration or union. The instruction read only "had union with". (Ex. E, p. 824). Thus, petitioner's challenge to the instruction on Count 3 fails, even on *de novo* review, because it is conclusively refuted by the record.

reasonable probability that, but for the alleged error, the result of his trial would have been different.  In prosecuting each sexual battery count, the State neither relied, nor presented evidence on the uncharged alternative.  In opening and closing statements, the State specifically and exclusively argued penetration as to Count 1, union as to Count 2, and union as to Count 3.  (*See* Ex. J, pp. 52-57 (prosecutor's opening arguments); Ex. L, pp. 423-71 (prosecutor's closing arguments)).   Although evidence of both penetration and union was submitted by the State during trial, such evidence was not used interchangeably for any count, nor was it used interchangeably between the counts alleged.  Rather, the prosecutor tailored her presentation of the evidence according to how it was charged – as an act involving exclusively penetration for Count 1, and as acts involving exclusively union for Counts 2 and 3.  (Ex. J pp. 62-107).  On Count 1, T.M.E. testified that petitioner caused him (T.M.E.) to perform oral sex on petitioner.  (Ex. J, pp. 77- 83).  On Count 2, T.M.E. testified that petitioner performed oral sex on him (T.M.E.).  (*Id*.).  On Count 3, T.M.E. testified that petitioner placed his mouth or tongue on T.M.E.'s anus.  (*Id*., pp. 84-85).  The jury found petitioner guilty of each count "as charged". (Ex. E, p. 820).

Thus, while it is true that the jury instructions for Counts 1 and 2 included alternative theories of "penetration or union", nothing in the record suggests even a possibility that petitioner was convicted on the uncharged alternative theory. Petitioner has not shown there is a reasonable probability that, but for the error, the result of his trial would have been different.

The First DCA's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, the *Strickland* standard. Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two     <u>"COUNSEL INEFFECTIVE IN FAILING TO RENEW OBJECTIONS AND MOVE FOR MISTRIAL BASED ON STATE POLICE WITNESS AND CLOSING COMMENTS ON DEFENDANT'S APPREHENSION."</u> (Doc. 1, p. 7).

Petitioner provides the following factual basis for this claim:

> Court appointed Counsel failed to object and move for mistrial, or move for new trial based on the testimony of police witness commenting on Petitioner[']s flight and apprehension by a tipster for "America's Most Wanted," and the state's "willingness to return" argument during closing argument as to the "America's Most Wanted" profile that held no relevancy to the crimes being charged.

(Doc. 1, p. 7). The parties agree that petitioner exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding. (Doc. 18, p. 22). Respondent

argues that petitioner is not entitled to relief because he has not met § 2254(d)'s deferential standard.  (Doc. 18, pp. 22-27).

Petitioner presented this claim to the state courts as Claim Two of his amended Rule 3.850 motion, where he explained the particular legal basis underlying his proposed objection:  "counsel should have renewed its earlier objection and motion for mistrial or for a new trial based on the decision in <u>Wilding v. State</u>, 674 So. 2d 114, 119 (Fla. 1996)."  (Ex. R, pp. 11-13).  The state circuit court identified the standard articulated in *Strickland* as the controlling legal standard, and denied relief as follows:

### Claim Two:  Defendant's Apprehension

Defendant next alleges that counsel was ineffective for failing to renew his objection and move for mistrial when details of Defendant's apprehension were testified to by the State's police witness and when the State commented on Defendant's apprehension during closing arguments.

Defendant alleges that because State witness Detective Paul Lio testified that after Defendant's case was twice profiled on "America's Most Wanted" a tip led to Defendant's apprehension and extradition from the Dominican Republic, counsel should have renewed his objection based on relevancy and moved for a mistrial.  Defendant claims that the fact he was profiled on "America's Most Wanted" is irrelevant and highly prejudicial "when brought out during trial, warranting reversal."

Defendant also asserts that in light of the trial court overruling counsel's objection to Detective Lio's testimony regarding Defendant's apprehension, there were "viable grounds" to move for a new trial post-verdict, based on the "issue that there is a reasonable possibility that the error affected the verdict."   Defendant claims that "the erroneous admission of irrelevant prejudicial evidence requires correction through a new trial."

Defendant further alleges that when the State commented during its closing argument that Defendant was not willingly brought back from the Dominican Republic, counsel should have renewed its earlier objection and moved for a mistrial or a new trial.

Defendant bases his allegations on the case of Wilding v. State, 674 So. 2d 114, 119 (Fla. 1996).   Defendant argues that when considering Wilding, the "America's Most Wanted" testimony coupled with the testimony about the "anonymous tip," cannot be considered harmless beyond a reasonable doubt.

Initially, it appears that Defendant's allegations regarding counsel's failure to renew his objection or move for a mistrial based on Detective Lio's testimony and the State's closing argument are facially insufficient as Defendant fails to allege that the results of his trial would have been different if counsel had objected or moved for mistrial. Additionally, Defendant alleges separate claims for postconviction relief (i.e. failure to renew objection or move for mistrial regarding Detective Lio's testimony; failure to object or move for mistrial regarding State's closing argument) without alleging specific prejudice as to each claim.  As Defendant has already been given the opportunity to amend his motion and this claim remains facially insufficient, the Court chooses to deny this claim with prejudice.  See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 2007); and Lawrence v. State, 987 So. 2d 157 (Fla. 2d DCA 2008).

*Arguendo*, even if these claims were facially sufficient, Defendant is still not entitled to relief. The record demonstrates that Detective Paul Lio testified to the following: Detective Lio first became involved with the investigation of Defendant in March of 2006, when an investigator from Department of Children's [sic] and Families (DCF) contacted him. Based on the information received from DCF, Detective Lio began his investigation. In June 2006, Defendant met with the minor victim, T.M.E., and an investigator with DCF. The contact was initiated because of statements T.M.E. made which were contrary to what he had told DCF initially. T.M.E. made accusations against Defendant during the June 2006 conversation. Once T.M.E. made the accusations against Defendant, Detective Lio attempted to locate Defendant. Detective Lio went to Defendant's last known residence: Defendant had moved out. Detective Lio contact Patricia Smith, the person who owned the homes where Defendant performed handyman-type duties and where Defendant abused T.M.E. Detective Lio went to Ms. Smith's former residence on Jessica Way only to find it vacant. Ms. Smith informed Detective Lio that Defendant had requested his final paycheck be sent to an address in Tampa. Detective Lio attempted to locate Defendant at the Tampa address to no avail. Detective Lio then obtained a warrant for Defendant's arrest. He contacted both the local and regional news stations and sent flyers to agencies in other Southern states, trying to find Defendant so he could be arrested. Detective Lio then had Defendant profiled on "America's Most Wanted" twice, and was about to have him profiled a third time when a lead finally resulted in Defendant being brought back to Santa Rosa County. Detective Lio confirmed that Defendant was extradited. When he was asked where Defendant was extradited from, Defendant's trial counsel objected on the basis of relevancy. A bench conference was conducted in which the State argued that the location from which Defendant was extradited was relevant as to Defendant's consciousness of guilt. The Court agreed and overruled the objection. Detective Lio was then permitted to testify that Defendant had been extradited back from the Dominican Republic in June of 2009.

Defendant also testified at trial that he did not return to Pensacola because he knew there was an investigation underway. Instead, Defendant left the first week of July 2006 for the Dominican Republic to take a "vacation" which lasted three years.

In closing arguments the State argued that the jury could infer Defendant had a consciousness of guilt because he left the country for the Dominican Republic and refused to waive extradition.

The Court notes that Defendant's reliance on Wilding is wildly misplaced. Wilding was not even a suspect until an anonymous tip was received that he had committed the murder. Law enforcement then tried to find Wilding via "America's Most Wanted" so that it could continue with its investigation of Wilding as a suspect. The Wilding Court found it was error to permit testimony regarding the anonymous tip "because the jury was led to believe that an unidentified person, who did not testify and who was not the subject of cross-examination, had given the police evidence of Wilding's guilt, evidence that upon investigation proved to be reliable." Wilding[,] 674 So. 2d at 119. The Court further opined that "the only issue the testimony could have gone to other than to establish the sequence of events leading to the investigation was Wilding's identity as the killer." Id. The Wilding Court held that the combination of the testimony regarding "America's Most Wanted" and the testimony of the anonymous tip linking Wilding to the murder could not be considered harmless error beyond a reasonable doubt. Id.

In the instant case, contrary to Defendant's allegations, it was not an anonymous tip that led authorities to seek Defendant, but the direct statements of T.M.E. (who testified at trial) identifying Defendant as his abuser. Detective Lio was not trying to merely investigate Defendant to discover if he *might* be a suspect; Defendant had been identified as *the* suspect by the victim of the crime. An arrest warrant had already been issued for Defendant before he was profiled on "America's Most Wanted." Based on the circumstances of this case, the facts surrounding Defendant's apprehension were not relevant just

to establish the sequence of events that led to Defendant's arrest but to also show Defendant's consciousness of guilt.  See Thomas v. State, 748 So. 2d 970, 982 (Fla. 1999) ("The law is well settled that when a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which might be inferred from such circumstances" (citations omitted; punctuation omitted)).  Consequently, Defendant's counsel did not act deficiently in failing to renew his objection or move for mistrial based on Detective Lio's testimony.

In regard to Defendant's allegation that counsel should have filed a post-trial motion for new trial because there is a reasonable possibility that the "error" of overruling the objection affected the verdict, the record demonstrates otherwise:  there was ample evidence presented at trial absent Detective Lio's testimony regarding extradition and "America's Most Wanted" to establish Defendant's guilt.

Additionally, the Defendant's counsel was not deficient for failing to object or move for mistrial based on the State's closing argument.  The State's closing argument was proper, being wholly based on the evidence submitted at trial.  There was no basis to challenge the State's argument regarding Defendant's apprehension.

Defendant has failed to demonstrate that his counsel was deficient or that he was prejudiced by his counsel's inaction.  Defendant is not entitled to relief as to this claim.

(Ex. R, pp. 24-30) (footnotes citing to trial transcript omitted).  The First DCA summarily affirmed.  *Fontana v. State*, 175 So. 3d 289 (Fla. 1st DCA 2015) (Table) (copy at Ex. T).

The First DCA reasonably could have adopted the state circuit court's factual findings, because they are amply supported by the record.  Based on these findings, the First DCA reasonably could have concluded petitioner failed to establish deficient performance and prejudice, because his proposed basis for objecting and moving for a mistrial – the Florida Supreme Court's decision in *Wilding, supra* – would have been rejected by the trial court for the reasons outlined.  *See, e.g., Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (emphasizing that when the state courts have already answered the question of how an issue would have been resolved under that State's law had defense counsel done what petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "[i]t is a fundamental principle that state courts are the final arbiters of state law." (internal quotation marks and citation omitted)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (same).  An attorney cannot be ineffective for failing to make a meritless argument. *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1284 (11th Cir. 2014) ("The state judge had a reasonable basis to decide that counsel was not deficient for failing to raise non-meritorious objections." (*citing Chandler v. Moore*, 240 F.3d 907, 917 (11th

Cir. 2001))); *see also Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . .).

The state circuit court's reasoned analysis provides at least one reasonable basis on which the First DCA could have denied relief.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three         "COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN
                     FAILING TO MOVE TO STRIKE VENIRE."  (Doc. 1, p. 8).

Petitioner alleges that during jury selection, "the prosecution stated to jurors 'there might be threats,' (in evidence) when replying to a juror[']s inquiry as to whether petitioner threatened the victims when no threats were in evidence."  (Doc. 1, p. 8).  Petitioner claims counsel was ineffective for failing to move to strike the entire venire on the basis that the prosecutor's statement compromised the jury's ability to be impartial.  The parties agree that petitioner exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding.  (Doc. 18, p. 28). Respondent argues petitioner is not entitled to relief because he has not met § 2254(d)'s highly deferential standard.  (Doc. 18, pp. 28-31).

Petitioner presented his claim to the state courts as Claim Three of his amended Rule 3.850 motion.  (Ex. R, pp. 13-15).  The state circuit court identified

the standard articulated in *Strickland* as the controlling legal standard, and denied

relief as follows:

### Claim Three:  The Venire

Defendant also alleges that his counsel was ineffective for failing to move to strike the entire venire during the jury selection process. Specifically, Defendant alleges that because the State told the prospective jurors that "[t]here might be threats," in response to a prospective juror's statement that "the abuser threatened them," the entire venire was tainted.  Defendant contends that because there was no evidence of threats entered into evidence at trial, the prosecutor intentionally used her influence to comment on Defendant's character to sway the jury's appraisal of the Defendant's moral culpability. Defendant alleges that the "threats" comment tainted the entire venire because it influenced the jury in finding Defendant guilty.  Defendant alleges that his counsel's failure to object or move for a mistrialFN29 based on the State's "offensive comment" precluded Defendant from gaining appellate review of this error.

> FN29   A motion for mistrial would have been surely denied as a trial does not officially begin until the jury is impaneled and sworn.

In addition to being conclusory and speculative, Defendant['s] claim's [sic] is facially insufficient as he has not sufficiently alleged how he was prejudiced:   Merely failing to preserve an issue for appellate review is not a sufficient claim of prejudice.  "The prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not its effect on appeal."  Strobridge v. State, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009).   Defendant also fails to demonstrate how the result of Defendant's trial would have been different if the venire had been struck and he had been tried by a different jury.  As Defendant has already been given the opportunity to amend his motion and this claim remains facially insufficient, the Court

chooses to deny this claim with prejudice.  See Nelson v. State, 977 So. 2d 710 (Fla. 1st DCA 2008); Oquendo v. State, 2 So. 3d 1001 (Fla. 4th DCA 2007); and Lawrence v. State, 987 so. 2d 157 (Fla. 2d DCA 2008).

Even if Defendant's claim were facially sufficient, the claim is refuted by the record.  Defendant has taken the State's "offensive comment" out of context to argue a prosecutorial violation that never existed.  During jury selection, the following interchange occurred:

> **MS. PACE [PROSECUTOR]:**  Is there anyone here that feels that – or can anyone here give me a reason of why you think a child might delay reporting a case of sexual abuse?  Okay, Ma'am, what's your name?
>
> **PROSPECTIVE JUROR:**  Candice Ciccone.
>
> **MS. PACE**:  Okay.  And you are for the record juror number 64.  Okay.
>
> **PROSPECTIVE JUROR**:  They could be scared to tell the truth, somebody scared about – might be them but anyway scared of the person that did it, you know.
>
> **MS PACE**:  Okay.
>
> **PROSPECTIVE JUROR**:  Just a child going to be scared and don't know what to do.
>
> **MS. PACE**:  All right.  Can anyone think of any other reason?  Her answer was they might be afraid.  Okay.
>
> **PROSPECTIVE JUROR**:  The abuser threatened them.
>
> **MS. PACE**:  Okay.  There might be threats.
>
> **PROSPECTIVE JUROR**:  Uh-huh.

**MS. PACE**:  And for the record that was Ms. Ramos –

**PROSPECTIVE JUROR**:  Ramos.

**MS. PACE**: – juror number 7.  Let's see.  And, ma'am you have your hand up.

**PROSPECTIVE JUROR**:   Not fully understanding what's happening to them.

**MS. PACE**:  Okay.  And for the record what is your name?

**PROSPECTIVE JUROR**: My name is Krisste Thedford.

**MS. PACE**:  Okay.  All right.  Anyone think of any reason that hasn't be[en] mentioned?

**PROSPECTIVE JUROR**:  I think the shame of it.

**MS. PACE**:  The shame.  Okay.  Is there anyone here that knows right now that if there's evidence of a delay in reporting that you would not be able to listen to potential reasons for that delay in reporting, such that it would affect your ability to be fair and impartial?  So everyone is indicating that you at least would have an open mind, be willing to listen to reasons that might be given for a delay in reporting?  You're not so closed mind[ed] to it that you just wouldn't consider that at all?

All right.  Just a couple more questions, and I promise you we are done. . . .

The record demonstrates that the prosecutor's comment was not improper and did not prejudice the venire.  Defendant has failed to demonstrate that counsel was deficient or that Defendant was

prejudiced by counsel's failure to move to strike the venire or object to the State's "comment." Defendant is not entitled to relief as to this claim.

(Ex. R, pp. 30-33). The First DCA summarily affirmed. *Fontana v. State*, 175 So. 3d 289 (Fla. 1st DCA 2015) (Table) (copy at Ex. T).

The state circuit court reasonably determined that the factual basis for petitioner's claim was conclusively refuted by the record – petitioner misrepresented the prosecutor's statements by taking them out of context. Viewed in context, the prosecutor in no way suggested petitioner actually threatened the victim or that there would be evidence of such. In context, the prosecutor's comment, "There might be threats," could have only been in response to a juror's statement concerning hypothetical reasons for delayed reporting, and could not possibly be read to refer to this case. Based on these findings, the circuit court reasonably concluded that counsel was not ineffective for failing to make a meritless objection. *Insignares*, 755 F.3d at 1284; *Freeman*, 536 F.3d at 1233.

The state circuit court's reasonable analysis provides at least one reasonable basis on which the First DCA could have denied relief. The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable

application of the *Strickland* standard.  Petitioner is not entitled to habeas relief on Ground Three.

Ground Four          "COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN FAILING TO INFORM PETITIONER OF OPTION TO WAIVE JURY TRIAL."  (Doc. 1, p. 10).

Petitioner final claim alleges:  "Court appointed Counsel in failing to inform him of his option to waive bench [sic] trial in light of obvious biased jurors the prosecution had misled during voir dire."  (Doc. 1, p. 10).  The parties agree that petitioner exhausted his state court remedies by presenting this claim in his Rule 3.850 proceeding.  (Doc. 18, p. 31).  Respondent argues that petitioner is not entitled to relief because he has not met § 2254(d)'s standard.  (Doc. 18, pp. 32-34).

Petitioner presented this claim to the state courts as Claim Four of his amended Rule 3.850 motion.  (Ex. R, pp. 15-16).  The state circuit court identified the standard articulated in *Strickland* as the controlling legal standard, and denied relief as follows:

**Claim Four:  Waive Trial by Jury**

Defendant alleges that his counsel was ineffective for failing to inform him of the option to waive a trial by jury and to proceed with a bench trial.  Defendant alleges that he would have chosen a bench trial if he had been informed of the option, given the offensive nature of his charged offenses "which gave rise to the probability of unreasonable jurors" and "the taint of misstatements by the prosecutor" during jury

selection.  Defendant further contends that the fact it took the jury only 15 minutes to return its verdict of guilty shows that the jury was biased.

Defendant's claim is facially insufficient as he fails to allege how the results of his trial would have been different if he proceeded with a bench trial vers[u]s jury trial.    There was ample evidence of Defendant's guilt.FN31  It is doubtful a Judge would have come to a different verdict based on the evidence.   Additionally, Defendant's allegation that the jury was biased is speculative, and his allegation that the venire was tainted in jury selection is refuted by the record, as discussed previously.  Defendant is not entitled to relief as to this claim

FN31  <u>See</u> Attachment 5, Transcript. Jury Trial, December 7, 2011, pp. 62-148; 150-179; 185-216; 263-312.

(Ex. R, p. 33).  The First DCA summarily affirmed.  *Fontana v. State*, 175 So. 3d 289 (Fla. 1st DCA 2015) (Table) (copy at Ex. T).

Petitioner has not shown that the First DCA's decision was unreasonable, much less contrary to *Strickland*.  Petitioner's claim of bias is based purely on speculation, as the state circuit court observed.  Neither the nature of the charges nor the short duration of the jury's deliberations, evidences jury bias, and petitioner's claim of prosecutorial misconduct is refuted by the record as discussed above.  The remainder of petitioner's claim is also speculative.   Petitioner points to no specific evidence in the record that would enable a fairminded jurist to conclude that there is a substantial likelihood the result of petitioner's trial would have been different had he opted for a bench trial.

The state court's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Petitioner is not entitled to habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting*

*Miller-El*, 537 U.S. at 327).   The petitioner here cannot make that showing. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Joseph Christian Fontana*, Santa Rosa County Circuit Court Case No. 09-CF-803, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 12th day of July, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.